(75 South. 353)

## O'REAR et al. v. WALKER. (7 Div. 863.)

(Supreme Court of Alabama. April 26, 1917.)

1. RELEASE ⬅️53 — AVOIDANCE — PLEADING AND PROOF.

Where defendants, in an action to recover money, set up a release, and plaintiff introduced no replication in avoidance, evidence that the release was secured by fraud practiced by one defendant was improperly admitted.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 93.]

2. SALES ⬅️437(2)—BREACH OF WARRANTY—RECOVERY BY BUYER.

Where an engine sold under warranty proved defective and was returned within the time provided by the contract, the buyer could recover from the seller such sums as he had paid up to that time, but could not recover money subsequently paid in consequence' of fraud, in the absence of a count to that effect.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1251, 1252.]

3. SALES ⬅️397—BREACH OF WARRANTY—RETURN OF PROPERTY—BURDEN OF PROOF.

In an action to recover money paid for an engine which proved not to be as warranted, the burden was on plaintiff to prove that the engine was seasonably returned to defendants.

[Ed. Note.—For other case, see Sales, Cent. Dig. § 1136.]

4. APPEAL AND ERROR ⬅️1042(2)—HARMLESS ERROR—PLEADING—EVIDENCE.

Where evidence that the buyers returned an engine to defendants as agents for the manufacturer rather than as sellers was admissible under a general traverse to the counts, alleged error in striking pleas setting up this theory was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4111; Pleading, Cent. Dig. § 1172.]

5. SALES ⬅️391(1)—BREACH OF WARRANTY—DEFENSE.

The institution of an action against the manufacturer of an engine which proved not to be as warranted did not exonerate the sellers from liability for the purchase money paid, where it did not appear that they were prejudiced thereby.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110, 1115, 1117, 1118, 1121.]

6. SALES ⬅️392 — BREACH OF WARRANTY — RETURN OF PROPERTY—ESTOPPEL.

Where the buyer is induced by false representations of the seller to return the engine which has proved not to be as warranted to the seller as agent for the manufacturer, the seller is estopped, in an action to recover the purchase money paid, to question the return as a compliance with the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1128–1131.]

7. PRINCIPAL AND AGENT ⬅️136(1)—LIABILITY OF PRETENDED AGENT.

A pretended agent contracting without authority renders himself liable to the other contracting party unless he at the time makes a full and honest disclosure of the nature and extent of his authority, so that the other contracting party may be said to have acted on his own judgment as to such authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 476, 477.]

Appeal from City Court of Gadsden; John H. Disque, Judge.

Action by J. B. Walker against B. C. O'Rear and another. From judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

Dortch, Martin & Allen and E. O. McCord, all of Gadsden, for appellants. W. J, Boykin and J. M. Miller, both of Gadsden, for appellee.

McCLELLAN, J. The appellee brought this action against the appellants. The issues submitted to the jury were those tendered by the averments of counts 1, 2, and 5, by a general traverse thereof, and by the averments of special pleas, 1, 3, and 4. In all of these counts the plaintiff's effort was to recover money paid in consequence of the purchase by the plaintiff from the defendants of a kerosene or gasoline engine with which to drive his shingle mill. They state a cause of action on a contract. They each aver that the plaintiff bought the engine from the defendants; that the defendants warranted it to be free from electrical and mechanical defects; that it would run smoothly and would prove to be absolutely reliable; that if, after trial by the plaintiff, the engine should not give entire satisfaction, the defendants would accept the return of the engine and refund plaintiff all the money paid therefor; whereupon it is averred that the assurances given were not satisfied by the engine after due trial, and that the plaintiff made the return to the defendants contemplated by the contract.

The facts, to summarily state them, involved in this litigation were that the appellants, as partners, were engaged in business at Attalla, Ala., and that the Detroit Engine Works was the manufacturer of the engine involved in this suit. In July, 1911, the plaintiff was induced by B. C. O'Rear to purchase one of the engines manufactured by this concern at the price of $386; the plaintiff paying to the appellant firm $100 in cash of the purchase price. Using a form furnished by the manufacturer, the firm of O'Rear & McMahan sent an order to the manufacturer for the engine in question, stating therein that they had inclosed check for $68.75. There was no mention of the plaintiff in the order. The engine was shipped to the firm and draft, with bill of lading attached, on the firm was sent to an Attalla bank for collection. Five days after the date of the order for the engine the plaintiff executed to the Attalla Bank two notes, on which S. S. Conn was a joint obligor. One of these notes was for $144.84, and the other $142.09, aggregating an amount equal to the balance of the purchase price of the engine after the deduction of the cash payment of $100. These notes were made to mature on the 22d day of December, 1911, and on the 22d day of March, 1912. On August 9, 1911, the plaintiff executed to O'Rear & McMahan his note for $286.93, payable March 22, 1912.

This note was secured by a mortgage on the engine in question, with other property. This obligation to the firm appears to have been for the unpaid balance of the purchase price of the engine, in the same sum for which the mentioned notes to the bank were given. According to the plaintiff's testimony, O'Rear took an active part in and direction of the act of plaintiff in making the notes to the bank. The engine having proven unequal to the warranties given, as is admitted in this record, the plaintiff brought the engine to Attalla and tendered it to O'Rear and McMahan. At first O'Rear declined to accept the engine, but later directed the plaintiff to put it in a warehouse in Attalla. About 24 days later the plaintiff instituted his action against the Detroit Engine Works to recover under a contract of similar import to that on which he declares in this action against the appellants. In that suit process of attachment was levied on the engine as the property of the Detroit Engine Works, and subsequently the money that plaintiff had paid to the Attalla Bank in satisfaction of the mentioned notes executed by the plaintiff to the bank was subjected to an attachment (garnishment) in aid of the plaintiff's action against the Detroit Engine Works. While the plaintiff's suit against the Detroit Engine Works was pending, viz. on June 1, 1912, plaintiff executed and delivered to B. C. O'Rear the following instrument:

"This is to certify that in consideration of the fact that B. C. O'Rear has this day given to me with [without] cost to me all interest the said B. C. O'Rear and O'Rear & McMahan has or had in a certain note or notes that I had given to the Attalla Bank to cover payment to the Detroit Engine Works for a 10-horse gasoline or kerosene engine now in litigation in the courts of Etowah Co. Alabama and that I also release the said B. C. O'Rear and O'Rear & McMahan from any and all responsibility as regards said Detroit Engine Works and in said engine now in litigation."

The plaintiff's suit against the Detroit Engine Works resulted in a judgment in favor of the defendant. The plaintiff's theory in that suit was that the appellants were the agents of the Detroit Engine Works in the sale of this engine to the appellee, and that this conclusion was induced by the untrue representations of B. C. O'Rear who, plaintiff testified, urged him to his action against the Detroit Engine Works. This conclusion, prevailing in the other suit, is supported and justified by the record now before this court. Our opinion is that the evidence conclusively shows that the appellants were the purchasers of this engine from the Detroit Engine Works, and that they were the vendors of the engine to this plaintiff as vendee. The order for the engine took no account of Walker as purchaser. Of the $100 payment made by the plaintiff only $68.75 was remitted to the Detroit Engine Works by the appellants. The engine was shipped to the appellants, and the draft was drawn against the appellants. So far as the appellants were concerned, the process by which plaintiff gave his notes to the bank for the balance of the purchase price, as well as his subsequent execution of a note and mortgage to the appellants in the same sum, had no effect to show that the sale of the engine was effected by the Detroit Engine Works, as vendor, to Walker, as the vendee.

[1] The appellants through plea 3 set up as a defense against this suit their release and discharge from liability in consequence of the instrument quoted. The plaintiff simply joined issue on this plea. If, as was the plaintiff's theory, his execution of the release, which on its face discloses a consideration therefor, was induced by fraud practiced upon him by B. C. O'Rear, individually or as a member of the appellant firm, he should have replied to the plea in order to draw within the issues triable the theory of fact in consequence of which he would claim an avoidance of the effect of the release so pleaded by the defendants. 34 Cyc. pp. 1097–1099; 9 Ency. Pl. & Pr. pp. 692, 693; 18 Ency. Pl. & Pr. p. 95. Since there was no replication interposed by the plaintiff in avoidance of the effect of the release pleaded by the defendants, the court was in error in admitting evidence that would have been appropriate to an issue so tendered by the plaintiff and in instructing the jury just as if the plaintiff had appropriately replied to the defendants' plea of a release of the claim sued upon.

[2] One of the issues of fact was whether the defendants in fact made the contract averred in counts 1, 2, and 5. If it was concluded from the evidence that the contract declared on in these counts was made between the defendants and the plaintiff, and the plaintiff returned the engine, confessedly deficient, within the time provided by the contract, the plaintiff would thereupon have become entitled to recover such sum of money as he had paid up to that time. If the plaintiff would assert a cause of action as for the money subsequently paid in consequence of fraudulent misconduct and misrepresentation on the part of O'Rear, it was necessary for him to construct a count to that effect, because under the terms of the contract alleged in counts 1, 2, and 5 the measure and limit of the liability of the defendants is the money he had paid prior to the return of the engine.

[3] Under the averments of the counts mentioned, it was essential that the plaintiff should discharge the burden he assumed to show that the engine was seasonably returned to the defendants as a condition precedent to the plaintiff's right to recover under those counts.

[4] The evidence discloses beyond dispute that the engine was returned to the defendants; but the defendants advance the theory in their pleading that if the return of the engine was made to them as agents for the

Detroit Engine Works, rather than to them as the vendors thereof to the plaintiff as vendee, the plaintiff would not be entitled to recover because of his failure to establish the stated condition precedent to his right to recover. The subject-matter of this theory was admissible under a general traverse of the allegations of the counts, and the striking of pleas undertaking to assert this theory was without prejudice to the defendants.

While there was evidence tending to show that negotiations were in progress to confer on the defendants a limited, exclusive authority to sell the engines manufactured by the Detroit Engine Works in that county, among others, there was no evidence of a consummated arrangement whereby these defendants were commissioned to sell this engine to the plaintiff as the agents of the Detroit Engine Works.

[5] It results from the conclusions stated that the circumstances afforded by the fact that the plaintiff instituted his action against the Detroit Engine Works and attached the engine and the money in the hands of the bank were without effect to exonerate the defendants from the liability asserted in the counts mentioned; it not appearing that these acts prejudiced in any way the rights of the defendants under the contract declared on in counts 1, 2, and 5. According to the averments of these counts, the plaintiff was entitled to the refund of the money he had paid to the defendants; provided he effected the return of the engine within the terms of the contract there declared on.

[6] The defendants must be held to have known that they were not agents for the Detroit Engine Works at the time the sale of this engine to the plaintiff was made; and if the return of the engine by the plaintiff to the defendants as agents was induced by the untrue representation of that fact, the defendants cannot be heard to question the effectiveness of the return of the engine by the plaintiff to them as the compliance with the condition precedent to that effect averred in counts 1, 2, and 5.

[7] It is perhaps unnecessary, in view of what has been said, to note the fact that in none of the counts to which reference has been made (1, 2, and 5) was any effort made to state a cause of action against these defendants under the principle that one who is not authorized to act as agent for another renders himself liable in the premises to the other contracting party, unless the pseudo-agent did at the time make such full and honest disclosure of the nature and extent of his authority to the other contracting party as that he may be said to have acted on his own judgment as to the existence or extent of such agent's authority. Ware v. Morgan, 67 Ala. 461; Schloss v. McIntyre, 147 Ala. 557, 41 South. 11, among others.

For the errors committed in admitting evi-dence tending to show fraud on the part of the defendants with respect to the execution of the release, and in instructing the jury upon the hypothesis that appropriate reply was made to the plea setting up the release in bar of a recovery, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.